UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JENNIFER J. BLAND                                                                                       PLAINTIFF

v.                                              No. 5:19-cv-05053

ERIC LYLE, et al.                                                                                     DEFENDANTS

**OPINION AND ORDER**

Before the Court are Defendants' motion (Doc. 19) for summary judgment, statement of facts (Doc. 20), brief in support (Doc. 21), Plaintiff's response in opposition (Doc. 22), Defendants' reply (Doc. 24), and two audio/video recordings (Docs. 20-8 and 24-1). After reviewing the record and recordings, the motion for summary judgment will be GRANTED.

**I.    Background**

Plaintiff filed this 42 U.S.C. §1983 lawsuit following her arrest at the Pea Ridge Police Department ("PRPD") on April 18, 2016. Plaintiff alleges various constitutional violations by Sergeant Eric Lyle, Captain Chris Olson, Officer Monty Motsinger, each in his individual capacity only, Chief Ryan Walker, in his official capacity, and the City of Pea Ridge, Arkansas. Specifically, Plaintiff contends that the Defendants violated her Fourth Amendment right to be free from unreasonable seizures by falsely arresting and imprisoning her and using excessive force against her, that Defendants retaliated against her on the basis of a protected activity, and that officers failed to intervene while Plaintiff was subjected to an unreasonable seizure. Plaintiff's brief also appears to assert claims for municipal liability for failure to train and violation of a policy or custom, though her complaint makes no mention of these claims.

Defendants moved for summary judgment on all claims, including the claims for municipal liability, arguing primarily that officers arrested Plaintiff pursuant to an active warrant for criminal

1

impersonation and obstruction of government operations. The Defendants further argue that officers used reasonable force when arresting Plaintiff because she initially resisted officers' attempts to arrest her. Following her arrest, Plaintiff pled guilty to criminal impersonation, in violation of Ark. Code Ann. § 5-37-208, and resisting arrest, in violation of Ark. Code Ann. § 5-54-103. In addition to the parties' briefing, Defendants conventionally filed two audio/video exhibits, a video of the PRPD lobby detailing the entire arrest, and an audio recording of Plaintiff's subsequent transport to jail. The Court has reviewed both audio/video exhibits.

## II. Legal Standard

When a party moves for summary judgment, it must establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). Only facts "that might affect the outcome of the suit under the governing law" need be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he non-movant must make a sufficient showing on every essential element of its claim on which it bears the burden of proof." *P.H. v. Sch. Dist. of Kan. City, Mo.*, 265 F.3d 653, 658 (8th Cir. 2001) (citation omitted). Facts asserted by the nonmoving party "must be properly supported by the record," in which case those "facts and the inferences to be drawn from them [are viewed] in the light most favorable to the nonmoving party." *Id*. at 656–57. The nonmoving party "is not entitled to the benefit of unreasonable inference or inferences in conflict with undisputed facts." *Linn v. Garcia*, 531 F.2d 855, 858 (8th Cir. 1976). In order for there to be a genuine issue of material fact, the nonmoving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66–67 (8th Cir. 1994) (quoting *Anderson*,

477 U.S. at 248). Where possible, on a motion for summary judgment, the Court relies "on evidence from a videotape of the incident . . . ." *Meehan v. Thompson*, 763 F.3d 936, 938 (8th Cir. 2014) (citing *Scott v. Harris,* 550 U.S. 372, 380–81 (2007)). As such, where one party's "version of events is so utterly discredited by the record that no reasonable jury could have believed him," there is no genuine dispute as to that fact. *Scott*, 550 U.S. at 380 (admonishing the Eleventh Circuit Court of Appeals for adopting a version of facts clearly contradicted by a videotape of the event).

## III. Analysis

### A. Fourth Amendment Claims

Plaintiff's § 1983 unreasonable seizure claim premised on false arrest and false imprisonment must be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck* and its progeny, "in order to recover damages for harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal." *Schaffer v. Beringer*, 842 F.3d 585, 594 (8th Cir. 2016) (citation and quotations omitted). Plaintiff's allegations of false arrest and false imprisonment arise out of her April 18, 2016 arrest. Though Plaintiff alleges that she was unlawfully arrested and detained, officers arrested her pursuant to an active warrant for criminal impersonation and obstruction. Following this arrest, Plaintiff pled guilty to the criminal impersonation charge. (Doc. 20-5, p. 1). To succeed on her § 1983 unreasonable seizure claims, Plaintiff must show that her state conviction was rendered invalid. *Anderson v. Franklin Cty., Mo.*, 192 F.3d 1125, 1131–32 (8th Cir. 1999) (affirming dismissal of § 1983 false arrest and false imprisonment claims where state conviction and sentence had not been rendered invalid). Because she has made no such showing, these claims must be dismissed.

*Heck* does not mandate dismissal of Plaintiff's § 1983 unreasonable seizure claim premised

3

on an excessive use of force. *Colbert v. City of Monticello, Ark.*, 775 F.3d 1006, 1007 (8th Cir. 2014) ("A finding that [Defendant] used excessive force would not necessarily imply the invalidity of [Plaintiff's] convictions.").[1] A plaintiff does not have a right to be free from all seizures; rather, the constitution only protects against unreasonable seizures. *Tennessee v. Garner* 471 U.S. 1, 7 (1985). An excessive force claim is analyzed under the Fourth Amendment and its "reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Under *Graham*,

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake. *Id.*, at 8, 105 S.Ct., at 1699, quoting *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983). Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *See Terry v. Ohio*, 392 U.S., at 22–27, 88 S.Ct., at 1880–1883. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *See Tennessee v. Garner*, 471 U.S., at 8–9, 105 S.Ct., at 1699–1700 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").

. . .

---

[1] Although the Eighth Circuit tends to discourage a *Heck* bar on excessive force claims, this may be a case where *Heck* supports dismissal. Plaintiff pled guilty to criminal impersonation but insists that she never impersonated a police officer. This argument is central to her complaint. Thus, Plaintiff's claim is not that officers used excessive force to effect her arrest. Rather, her position is that she did nothing wrong and so any use of force against her by officers was automatically excessive. (*See* e.g., Doc. 22-2, p. 5 ("[W]hen I walked in the lobby I was assaulted by 4 men in police uniforms."); Doc. 22, p. 8 ("Plaintiff was not actively resisting arrest or attempting to evade arrest by flight.")). Because such a defense would necessarily challenge the factual foundation that underlies her criminal conviction, her excessive force claim is arguably barred by *Heck*. *See Arnold v. Town of Slaughter*, 100 F. App'x 321, 324-25 (5th Cir. 2004) (finding plaintiff's excessive force claim Heck barred for same reason). The Court has nonetheless considered Plaintiff's claim as if not prohibited by *Heck*, construing them as an allegation that officers used force in excess of that reasonably necessary to effect her arrest.

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *See Terry v. Ohio*, *supra*, 392 U.S., at 20–22, 88 S.Ct., at 1879–1881 . . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Johnson v. Glick*, 481 F.2d, at 1033, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 396-97.

After reviewing the video of the PRPD lobby, it appears only Sergeant Lyle and Captain Olson were involved in Plaintiff's arrest and therefore only they can be held liable for excessive force. *See Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (noting that each governmental official is liable only for his or her own misconduct). Thus, Sergeant Lyle is responsible only for the force used to grab Plaintiff's left arm to pull it behind her back, the force used to handcuff her, and the force from kicking the back of Plaintiff's leg. Captain Olson is responsible only for the force used to grab Plaintiff's right arm, and the force used when sliding "his body and arm towards her head" and "hugging her head against his body" while they arrested her. (Doc. 20, p. 6, ¶ 32).[2] Both officers are responsible for any damages caused by the force used when they pushed Plaintiff against the wall.

It is undisputed that the officers used force when arresting Plaintiff, but having reviewed the audiovisual recording of that use of force, no reasonable jury would find that the force employed by the officers was unreasonable in light of the circumstances known to the officers at the time. It is indisputable that Plaintiff was actively resisting arrest. When Captain Olson told Plaintiff he had a warrant, she immediately began yelling and backing away from the officers. The

---

[2] Although the Court is unable to independently verify this account of Captain Olson's conduct, Plaintiff does not dispute these allegations. The Court therefore accepts this account of Captain Olson's conduct as true.

officers repeatedly instructed Plaintiff to put her hands behind her back. As they approached her, Plaintiff continued to yell, stating the officers did not have a warrant, and moved toward the exit door. As Plaintiff moved toward to the exit door, Sergeant Lyle grabbed her left arm and Captain Olson grabbed her right arm to put her hands behind her back. Both officers pushed her against a wall next to the exit door. Captain Olson then put his weight on Plaintiff to hold her down and Sergeant Lyle twice kicked Plaintiff's leg. Once Plaintiff is against the wall, she yells, "I'm not fighting" and "I'm disabled." Sergeant Lyle then placed handcuffs on Plaintiff. The entire encounter lasts approximately 40 seconds.

The undisputed facts are that Plaintiff was noncompliant and resisting arrest, so some use of force in effecting her arrest became justified. *See Graham*, 490 U.S. at 396-97; *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017); *Greiner v. City of Champlin*, 27 F.3d 1346, 1355 (8th Cir. 1994); *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990). Again, in light of the recording of that arrest, no reasonable jury would find that the force used by the officers when grabbing Plaintiff's arms and pushing her against the wall was excessive. Additionally, Plaintiff's mere allegation that Sergeant Lyle's use of "overly tight" handcuffs was excessive fails as a matter of law. *Foster*, 914 F.2d at 1082 (holding plaintiff's claim of "pain as a result of being handcuffed, without some evidence of more permanent injury" is insufficient to support an excessive force claim). No reasonable jury would find that Sergeant Lyle and Captain Olson used unreasonable force when they grabbed Plaintiff's arms, pushed her against a wall, and handcuffed her.

Nor would a reasonable jury find Sergeant Lyle's use of force was excessive when he kicked Plaintiff's leg to force her to the ground, even if (as it appears from the video) Sergeant Lyle kicked Plaintiff's leg after Plaintiff stopped actively resisting (or, at the very least, it is

6

reasonable to infer Plaintiff stopped resisting because she shouted "I'm not fighting" at the time same Sergeant Lyle delivered his second kick). Only 15 seconds elapsed between Plaintiff's initial refusal to submit to arrest and Sergeant Lyle's kicks—a very short window where Sergeant Lyle had to make split-second decisions. An objectively reasonable officer under these circumstances would reasonably believe Plaintiff might continue her attempts of seconds earlier to leave and would reasonably believe that taking Plaintiff to the ground was necessary to prevent her escape. *Accord Shekleton v. Eichenberger*, 677 F.3d 361, 366 (8th Cir. 2012) (explaining the reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene" considering, among other circumstances, "whether the suspect is actively resisting or attempting to evade arrest by flight"). Additionally, "[t]he degree of injury suffered in an excessive-force case is certainly relevant insofar as it tends to show the amount and type of force used." *Grider v. Bowling*, 785 F.3d 1248, 1252 (8th Cir. 2015) (citing *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011)). The Court scoured Plaintiff's pleadings and brief and could locate no allegation of physical injury to her lower body. Rather, the physical injuries Plaintiff alleges she suffered are exclusively to her arms and shoulders—bruising, tissue damage, etc. Because Plaintiff alleges no injury resulting from Sergeant Lyle's kicks, and because Plaintiff was actively resisting during a swift arrest that began with her attempts to leave, no reasonable jury would find that Sergeant Lyle used excessive force when he kicked Plaintiff during the course of her arrest.[3]

---

[3] Plaintiff submitted what appears to be a proposed expert report attached as an exhibit to her response. Setting aside the clear absence of reliable methodology (i.e. the proposed expert claims to have reviewed documents and items that do not exist), the Court notes that the proposed expert's two conclusions are contrary to the undisputed facts of the case. For example, the report concludes, "there appears to be no justification for the use of force in this situation." (Doc. 22-2, p. 3). As discussed, the justification for the use of force was Plaintiff's indisputable evasion and resistance.

Having found the force employed by Sergeant Lyle and Captain Olson was reasonable, Plaintiff's claim for failure to intervene must also be dismissed. *See Hollingsworth v. City of St. Ann.*, 800 F.3d 985 (8th Cir. 2015) (dismissing failure to train claim after granting qualified immunity on excessive force claim); *see also Clark v. Ware*, 873 F.Supp.2d 1117, 1122 (E.D. Mo. 2012) ("[O]fficers at the scene of an arrest can only be held liable for failing to intervene if there was an underlying violation of arrestee's constitutional rights.") (citing *Putman v. Gerloff*, 639 F.2d 415, 423-24 (8th Cir. 1981)).

### B.     False Statements

Plaintiff's complaint also alleges her arrest was unlawful because the probable cause affidavit used to obtain the arrest warrant included false statements. "A warrant based upon an affidavit containing deliberate falsehood or reckless disregard for the trust violates the Fourth Amendment *and subjects the officer who submitted the affidavit to § 1983 liability*." *Schaffer v. Beringer*, 842 F.3d 585, 593 (8th Cir. 2016) (emphasis added) (quoting *Block v. Dupic*, 758 F.3d 1062, 1062 (8th Cir. 2014)). Showing deliberate or reckless falsehood is a high standard, and "mere allegations of deliberate or reckless falsehood are insufficient." *Id.* (quoting *United States v. Kattaria*, 553 F.3d 1171, 1177 (8th Cir. 2009). Notably, Sergeant Davis submitted the probable cause affidavit, and the statements within it are attributable to him and him alone. (Doc. 20-2). Plaintiff did not name Sergeant Davis as a defendant. Thus, she has no claim for unlawful arrest based on false statements. This claim will be dismissed.

### C.     Retaliation Claim

Plaintiff's First Amendment retaliation claim also fails. To establish a First Amendment retaliation claim, Plaintiff must show:

> (1) [she] engaged in a protected activity; (2) [the officers] took adverse action against her that would chill a person of ordinary firmness from continuing in the

activity; (3) the adverse action was motivated at least in part by the exercise of the protected activity; and (4) lack of probable cause or arguable probable cause.

*Hoyland v. McMenomy*, 869 F.3d 644, 655 (8th Cir. 2017) (internal quotations omitted) (quoting *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014)). Plaintiff argues she was arrested in relation for investigating a cold case and making a public records request associated with her investigation. Even assuming Plaintiff engaged in a protected activity, her retaliation claim must be dismissed because she cannot demonstrate a causal connection between any adverse action and that protected activity.

"Under the third part of the test, 'a plaintiff must show that the retaliatory motive of the officers was a "substantial factor" or "but-for-cause" of the adverse action." *Id.* at 657 (internal alterations omitted) (quoting *Peterson*, 754 F.3d at 602). "The causal connection is generally a jury question, but it can provide a basis for summary judgment when the question is so free from doubt as to justify taking it from the jury." *Id.* (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). Here, Plaintiff alleges that she was arrested because she requested records as part of her investigation. However, the officers' reason for arresting Plaintiff is beyond debate—they had an active warrant for her arrest, issued on the basis that Plaintiff had been impersonating a law enforcement officer. The officers made this fact clear by telling Plaintiff they had the warrant before arresting her. Though, Plaintiff's proposed expert concludes that she "*may have been retaliated against for investigating a cold case.*" (Doc. 22-2, p. 3) (emphasis added), this is clearly at odds with the undisputed facts. The causation question is free from doubt. Plaintiff was arrested pursuant to an arrest warrant, not because she engaged in any protected activity. Plaintiff's First Amendment retaliation claim will be dismissed.

**D.  Municipal Liability**

Finally, it is questionable at best whether Plaintiff's complaint states a plausible claim for

municipal liability. The Complaint makes no mention of a policy or custom, nor does it include any allegation that the officers were improperly trained. However, in light of the liberal pleading standards afforded pro se plaintiffs, even assuming Plaintiff's complaint sufficiently pleads a claim for municipal lability, those claim(s) will be dismissed because the Court has found no underlying constitutional violation.

## IV. Conclusion

IT IS THEREFORE ORDERED that Defendants' motion (Doc. 19) for summary judgment is GRANTED, and Plaintiff's claims against Defendants are DISMISSED WITH PREJUDICE. A judgment will be entered separately.

IT IS SO ORDERED this 1st day of April, 2020.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE